Appeal No. 21-11359GG

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**CHARLES JOHNSON JR.,**
**Appellant,**

v.

**CITY OF ATLANTA,**
**DAVID ROLFE,**
**Appellees.**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## U.S.D.C NO. 1:21-CV-01977-JPB

### BRIEF OF APPELLANT

---

**Attorney for Appellant**
Ralph Goldberg
Georgia Bar No. 299475
**Goldberg & Cuvillier, P.C.**
3469 Lawrenceville Hwy., Suite 102
Tucker, Georgia 30084
Tel:   (770) 670-7343
Fax:   (770) 670- 7344

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT

In accordance with 11th Cir.R.26.1, Appellant file his Certificate of

Interested Persons and Corporate Disclosure Statement, listing the trial judge(s),

and all attorneys, persons, associates, firms, partnerships, or corporations that have

an interest in the outcome of this case or appeal, including subsidiaries,

conglomerates, affiliates and parent corporations, including any publicly held

company that owns 10% or more of the party's stock, and other identifiable legal

entities related to a party.

1. The undersigned certifies that the following is a full and complete list of trial
   judges:

   a. The Honorable J.P. Boulee- United States District Court Judge;

2. The undersigned further certifies that the following is a full and complete list
   of all persons, firms, partnerships, or corporations having either a financial
   interest in or other interest which could be substantially affected by the
   outcome of this particular case:

   a. Goldberg & Cuvillier, P.C.;

   b. Ralph Goldberg- Attorney for Appellant;

   c. Charles Johnson, Jr.- Plaintiff-Appellant;

   d. David Rolfe- Defendant-Appellee;

i

e.  City of Atlanta- Defendant-Appellee;

3.  The undersigned further certifies that the following is a full and complete list

of all persons serving as attorneys for the parties in this proceeding:

a.  For the Appellant- Ralph Goldberg

b.  For the Appellees- Thomas Mitchell

c.  For the Appellees- Caruthers & Mitchell, P.C.

d.  For the Appellees- Pearson Kern Cunningham

e.  For the Appellees- R. David Ware;

f.  For the Appellees- Hall, Booth, Smith, P.C.

Goldberg & Cuvillier, P.C.
3469 Lawrenceville Hwy., Ste. 102
Tucker, GA 30084
(770) 670-7343
(770) 670-7344
attorneygoldberg@hotmail.com

Ralph Goldberg
Georgia Bar No. 299475
Attorney for Appellant

## STATEMENT FOR ORAL ARGUMENT

Although the Court has stated in <u>dicta</u> that a videotape can be considered on a motion to dismiss, this Court has never held that where the videotape is not referred to in the complaint, that it could be considered. Nor could it, because a videotape can never be a written instrument" under the F.R.C.P. 10(c). The district court's opinion is contrary to the plain meaning of rule, misreads this Courts' precedent and is contrary to the unanimous interpretation of F.R.C.P. 10(c) across the nation.

Moreover, the district court misreads Court precedent on "de minimis" injury and failed to consider the "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."

Plaintiff respectfully submits that oral argument will aid the Court in its decision and respectfully requests oral argument.

iii

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure…………………….....…i

Statement for Oral Argument……………………………………………...……iii

Table of Contents and Other Authorities………………….……………………vi.

    A. Table of Cases……………………………………………….…...v

    B. Table of Other Authorities………………………………………..xiii

I. Statement of Jurisdiction…………………………………………..…….…1

II. Statement of Issues Presented for Review…………………………………1

III. Statement of the Case…………………………………………………..2

    A. Course of Proceedings and Dipositions In The District Court………...2

    B. Standard of Review…………………………………………………3

    C. Statement of the Facts…………………………………………4

IV. Summary of the Argument………………………………………………10

V. Argument and Citation of Authority………………………………...13

A. A VIDEOTAPE IS NOT A DOCUMENT UNDER F.R.C.P. 10(C)…...……..13

B. ELEVENTH CIRCUIT PRECEDENT DOES NOT MANDATE A

DIFFERENT RESULT...........................................................................18

C. THE COURT ERRED IN FINDING PLAINTIFF'S INJURIIES DE

MINIMIS……………………………………………………….…22

D. THE COURT FAILED TO PROPERLY APPLY THE <u>GRAHAM V.</u>

<u>CONNOR</u> FACTORS AND ERRONEOUSLY GRANTED DEFENDANT

QUALIFIED IMMUNITY……………………………………………………...32

E. THE CITY HAS MONELL LIABILITY…………..………………..…..…..43

F. DEFENDANT ENTITLED TO OFFICIAL IMMUNITY AS A MATTER OF

LAW……………………………………………………………………………44

VI. CONCLUSION……………………………………………………………49

VII. Certificate of Compliance with Rule 32(a)…………………………………..51

VII. Certificate of Service…………………………………………………………...52

TABLE OF CASES AND OTHER AUTHORITIES

A. CASES

*Adams v. Hazelwood, 271 Ga. 414 (1999)……………..……..........................46

Aralac, Inc. v. Hat Corp. of Am., 166 F.2d 286 (3d Cir. 1948)………...............13

*Argo v. Glasscox, 903 F.3d 1207 (11th Cir. 2018)……………..………....28, 29

AT Sys. Se., Inc. v. Carnes, 613 S.E.2d 150 (Ga. 2005)………………………....48

Baddall v. State Street Bank and Trust Co., 137 F.3d (1st Cir. 1998)…….............20

Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting Ass'n, 137 F. 3d 1293 (11th Cir. 1998)....................................................................3

Bordeur v. City of New York, 2002 WL 424688 (S.D.N.Y. 2002)………………16

Bowens v. Aftermath Entm't, 254 F. Supp. 2d 629 (E.D. Mich. 2003)………......17

Boykin v. Gray, 895 F. Supp. 2d 199 (D.D.C. 2019) aff'd 650 Fed Appx 42 (D.C. Cir. 2016)……………………………………………………………..............14

Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994)……………………………..........20

*Brand v. Casal, 877 F.3d 1253 (11th Cir. 2017)………..…………………….12, 38

Brass v. American Film Techns. Inc., 987 F.2d 142 (2d Cir. 1993)…………........16

Brewers v. Aftermath Entertainment, 254 F. Supp. 2d 629 (E.D. Mich. 2003)......15

Brooks v. Blue Cross and Blue Shield, 116 F.3d 1364 (11th Cir. 1997)……....…..21

Business Guides, Inc. v. Chromatic Communities Enterprises. Inc., 498 U.S. 533 (1991)……………………………………………………………....…9, 13

*Cantrell v. McClure, 805 Fed. Appx. 817 (11th Cir. 2020)…..............…9, 13, 18, 19

Chamlee v. Henry County Bd. of Ed., 239 Ga.App. 183 (1999)……………….....45

Chrysler Corp. v. Batten, 264 Ga. 723 (1994)…………….....................................46

City of Los Angeles v. Heller, 475 U.S. 796 (1986)……………………………...43

Coleman v. Atlanta Obstetrics & Gynecology Group, 390 S.E.2d 856 (Ga. 1990)......................................................................................................................48

Crawford's Auto Center, Inc. v. State Farm Mutual Automobile Ins. Co., 945 F.3d 1150 (11th Cir. 2019)………………………………………………....9, 21

Crocker v. Beatty, 995 F.3d 1232 (11th Cir. 2021) ………………………..……...23

Daniels v. Gordon, 232 Ga.App. 811 (1998)……………….....................................46

Davis v. Williams, 451 F.3d 759 (11th Cir. 2006)……………………………….26, 29

*Day v. Taylor, 400 F.3d 1272 (11th Cir. 2005)…………..…………………..19, 21

*Deole v. Rutherford, 272 F.3d 1272 (9th Cir. 2001)………....................38, 39, 42

Desert Palace, Inc. v. Khatchaturian, 2012 WL 2389628 (D. Nev. 2012)…………………………………………..........................18

Durrothy v. Pastor, 351 F.3d 1080 (11th Cir. 2003)……………………………...…23

Edwards v. Prime, Inc., 602 F.3d 1276 (11th Cir. 2016)……………………..…....18

Favors v. City of Atlanta, 849 Fed. Appx. 813 (11th Cir. 2022)………………10, 44

Fernandez v. City of Cooper City, 207 F. Supp 2d 1371 (S.D. Fla. 2002)............39

*Fils v. City of Aventura, 647 F.3d 1272 (11th Cir. 2012)...…........12, 35, 38, 40, 43

Fuller v. MARTA, 2018 WL 8867801 (N.D. Ga. 2018)…………………………38

Galvez v. Bruce, 552 F.2d 1238 (11th Cir. 2008).....................................................26

Gamble v. Ware County Bd. of Ed., 253 Ga.App. 819 (2002)…………………..45

Gerbascher v. City of New York, 134 F. Supp. 3d 711 (S.D.N.Y. 2015)…...........22

GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381 (10th Cir.
1997)......................................................................................................................20

Gold v. City of Miami, 121 F.3d 1442 (11th Cir. 1997)………………..............32

*Graham v. Connor, 490 U.S. 386 (1989)……........................................ 1, 10, 11,
12, 25, 26, 29, 32, 36, 37, 38, 40, 41, 42, 43, 49

Griswold v. Collins, 318 Ga. App. 536 (2012)........................................................45

Hadley v. Gutierrez, 526 F.3d 1324 (11th Cir. 2008)..............................................24

Hall v. McGee, 762 Fed. Appx. 837 (11th Cir. 2019)…………………………..36

*Harris v. Ivax Corp., 182 F.3d 799 (11th Cir. 1999)……............………..…20, 21

Hawthorne v. Mac Adjustment, Inc., 140 F. 3d 1367, 1370 (11th Cir. 1998)............3

Hebert Abstract Co. v. Touchstone Properties, Ltd., 914 F. 2d 74 (5th Cir.
1990).....................................................................................................................40

Hinson v. Bias, 927 F.3d 1103 (11th Cir. 2019)……...........…………….....32, 33, 34

Hinton v. City of Elwood, 997 F.2d 774 (10th Cir. 1993)…………………………9

viii

Hoak v. Attorney General, 2013 WL 2382722 (D. Ida. 2013)........................14

*Horsley v. Feldt, 304 F.3d 1125 (11th Cir. 2002)...…........9, 13, 16, 17, 19, 20, 21

Hudson v. McMillian, 503 U.S. 1 (2010)…………………………………….....11

*Ingram v. Kubik, 30 F.4th 1241 (11th Cir. 2022)…..…………....….12, 31, 35, 39

In Re Silicon Graphics, Inc. Securities Litigation, 970 F. Supp. 746 (N.D. Cal. 1997)..........................................................................................................20

*Johnson v. City of Miami Beach, 18 F.4th 1267 (11th Cir. 2021)…….…..….31, 41

Jones v. Buchannan, 325 F.3d 520 (4th Cir. 2003)………........…………………..25

Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997)……………….…….27, 32

Koger v. Carson, 853 Fed Appx 341 (11th Cir. 2021)...........................................32

Lagroon v. Lawson, 759 S.E.2d 878 (Ga. Ct. App. 2014)…………………….........49

*Lee v. Ferraro, 284 F.3d 1198 (11th Cir. 2002)………........... 28, 29, 31, 35, 36, 45

Lesowitz v. Tittle, 2019 WL 3006428 (N.D. Ga. 2019)…………………….......17

*Levenstein v. Salafsky, 164 F.3d 345 (7th Cir. 1998)…………….....……16, 17, 20

Longino v. Henry County, 791 Fed Appx 826 (11th Cir. 2019)…………….........32

Martin v. City of Elwood, 997 F.2d 774 (10th Cir. 1993)…………………….........44

McDowell v. Smith, 285 Ga. 592 (2009)……………………...............................45

*Mercado v. City of Orlando, 407 F.3d 1152 (11th Cir. 2005)......…12, 35, 38, 39,43

Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978)...........................1, 43, 50

Mora v. City of Chula Vista, 2021 WL 1165054 (S.D. Cal. 2021)……………….14

Myers v. Bowman, 713 F.3d 1319 (11th Cir. 2013)………………………………31

Nkemakolam v. St. John's Military Sch., 876 F. Supp. 2d 1240(D. Kans. 2012)……………………………………………………………………...........14

Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000)………………………23, 28, 32, 36

*Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449 (7th Cir. 1998)...................................................................................................16, 17

Oppenheimer v. Mountain States Health Alliance, 2020 WL 1967235 (E.D. Tenn. 2020)…………………………………………………………………….........22

Park-In Theatres, Inc. v. Paramount-Richards Theatres, Inc., 81 F. Supp. 466 (D.Del. 1948)......................................................................................................14

Patel v. City of Madison, 959 F.3d 1330 (11th Cir. 2020).......................................35

Porter v. Massarelli, 303 Ga. App. 91 (2010)………………….....……………...47

Post v. City of Fort Lauderdale, 7 F.3d 1552 (11th Cir. 1993) modified 14 F.3d 583 (11th Cir. 1994)…………………………………………………………......36

Priester v. City of Riviera Beach, 208 F.3d 919 (11th Cir. 2000)……………...27

*Quinnette v. Reed, 805 Fed. Appx. 696 (11th Cir. 2020)………..………….10, 19

Rahmaan v. McQuilkin, 2021 WL 86842 (N.D. Ga. 2021)……………………22

Ray v. McCullough, Payne, and Haane LLC, 883 F.3d 1107 (11th Cir. 2016)………………………………………………………………..…18, 23

Reese v. Herbert, 527 F.3d 1253 (11th Cir. 2008)………………………..……25, 40

Rivera v. Robinson, 2019 WL 1326588 (E.D. La. 2019)…………………………18

*Roberts v. Carnival Corporation, 824 Fed Appx 825 (11ᵗʰ Cir. 2020)………......21

Rose v. Bartle, 871 F.2d 331 f.3 (3ʳᵈ Cir. 1989)…………………………………..13

*Saunders v. Duke, 766 F.3d 1262 (11ᵗʰ Cir. 2014)……..……………10, 23, 26, 36

Schlagenhauf v. Holder, 379 U.S. 104 (1964)……………………………………13

Scott v. Battle, 688 Fed. Appx. 674, 677 (11th Cir. 2017)................................34, 35

Scott v. Harris, 550 U.S. 372 (2007)………………………………………….....8

*Sebastian v. Ortiz, 877 F.3d 1253 (11ᵗʰ Cir. 2017)……....………12, 35, 36, 37, 42

Sheth v. Webster, 145 F.3d 1231 (11ᵗʰ Cir. 1998)....................................................35

Slicker v. Jackson, 215 F.3d 1225 (11ᵗʰ Cir. 2000)…………………………...10, 24

Smith v. Mattox, 127 F.3d 1416 (11ᵗʰ Cir. 1997)....................................................27

*Stanley v. Illinois, 405 U.S. 645 (1972)…………......…………………..…………37

Stephens v. City of Homewood, 976 F.3d 769 (11ᵗʰ Cir. 2020)…………………..12

*Stephens v. DeGiovanni, 852 F.3d 1298 (11ᵗʰ Cir. 2017)..10, 24-28, 29, 34, 35, 36

*Stryker v. City of Homestead, 976 F.3d 769 (11ᵗʰ Cir. 2020)……..………12, 40, 41

Swerdloff v. Miami Nat'l Bank, 584 F. 2d 54 (5th Cir. 1978).................................3

Talamantes-Enriquez v. U.S. Attorney General, 12 F.4ᵗʰ 1340 (11ᵗʰ Cir. 2021) ....18

Taylor v. Taylor, 649 Fed. Appx. 737 (11ᵗʰ Cir. 2016)……………………....…10, 23

Tobinick v. Novella, 884 F.3d 1110 (11ᵗʰ Cir. 2018)............................................31

*Thornton v. City of Macon, 132 F.3d 1395 (11ᵗʰ Cir. 1998)……………….....30

Tittle v. Corso, 256 Ga. App 859 (2002)………………………………....……….44

Tuggle v. Rose, 333 Ga. App. 431 (2013)………………………………………...47

Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429 (7th Cir. 1993)....15

Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002)……….....................12, 25, 31, 40

Watermark Senior Living Retirement Cmtys., Inc., v. Morrison Mgmt. Specialists, Inc., 905 F.3d 421 (6th Cir. 2018)……………………………………….............17

Weiner v. Klais & Co., Inc., 108 F.3d 86 (6th Cir. 1997)………………………....15

West v. Davis, 767 F.3d 86 (6th Cir. 1997)..............................................................26

Wilkins v. Graddy, 559 U.S. 34..................................................................10, 11, 24

Woodruff v. City of Trussville, 434 F. App'x 852 (11th Cir. 2011)………………27

## B. <u>OTHER AUTHORITY</u>

28 U.S.C. § 1291.................................................................................................1

42 U.S.C. § 1983....................................................................................2, 26, 17

F.R.C.P. 10(c)...........................................................................1, 9, 13, 14, 15, 16

F.R.C.P. 12(b)(6)...........................................................................2, 14, 20, 21

Georgia Constitution Art. I, Sec, II, Para, IX(d).....................................................45

F.R.C.P. 12(c).............................................................................................2, 4, 17, 21

O.C.G.A. § 40-6-91...........................................................................................11

Wright A. Miller, <u>Federal Practice and Procedure</u> § 1327................................14, 21

## I.    STATEMENT OF JURISDICTION

This Court has jurisdiction of the final judgment under 28 U.S.C. § 1291.

## II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

1) Did the Court erroneously consider the videotape of Plaintiff's arrest wl
   the videotape was not attached to either the complaint, was not referred
   the complaint, was not central to Plaintiff's claims and cannot be a writt
   instrument under F.R.C.P. 10(c)?

2) Where Plaintiff had been charged with a misdemeanor and was slamme
   the asphalt when he was not actively resisting and thereafter required tw
   surgeries, can his injury be termed de minimis?

3) Where all the Graham factors favored Plaintiff, did the Court err in find
   that Plaintiff had not stated a cause of action for excessive force and
   Defendant Rolfe enjoyed qualified immunity?

4) Did Plaintiff state a claim for Monell liability against the City?

5) Did Defendant enjoy official immunity under state law when he deliber:
   and intentionally slammed Plaintiff to the asphalt?

1

## III.    STATEMENT OF THE CASE

## A. COUSE OF PROCEEDING AND DIPOSITIONS IN THE DISTRICT COURT

Plaintiff brought suit for excessive force in violation of the Fourth Amendment

pursuant to 42 U.S.C. § 1983 as well as supplemental state claims under Georgia

law (R1-1). He sued the officer and the City of Atlanta (R1-1).

The City moved to dismiss the case under F.R.C.P. 12(b)(6) (R1-5) and

Plaintiff responded (R1-12). The officer moved to dismiss the case under F.R.C.P.

12(c) (R1-16). Plaintiff had not attached the videotape or referred to the video in

his complaint (R1-1) Plaintiff timely responded to the motion (R1-18).

After erroneously considering the videotape (R1-20) the Court dismissed

Plaintiff's complaint because he had alleged only de minimis injury (R1-20-13)

and had otherwise not stated a claim (R1-20). In addition the Court held the officer

had qualified immunity (R1-20-15). He also dismissed the claims against the City

and held that the officer enjoyed official immunity as a matter of law (R1-20-21).

From the final judgment (R1-21) Plaintiff timely appealed.

2

## B. STANDARD OF REVIEW

This Court reviews:

> A judgment on the pleadings *de novo*. See Slagle v. ITT Hartford, 102 F. 3d 494, 497 (11th Cir. 1996) (citing Ortega v. Christian, 85 F. 3d 1521, 1524–25 (11th Cir. 1996). Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. See Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting Ass'n, 137 F. 3d 1293, 1295 (11th Cir. 1998) (citing Hebert Abstract Co. v. Touchstone Properties, Ltd., 914 F. 2d 74, 76 (5th Cir. 1990)); see also Rule 12(c), F.R.C.P. When we review a judgment on the pleadings, therefore, we accept in the complaint as true and we view them in the light most favorable to the nonmoving party. See Ortega, 85 F. 3d at 1524 (citing Swerdloff v. Miami Nat'l Bank, 584 F. 2d 54, 57 (5th Cir. 1978)).

Hawthorne v. Mac Adjustment, Inc., 140 F. 3d 1367, 1370 (11th Cir. 1998).

The standard under 28 U.S.C. § 2106 as to whether to reassign a case is whether the trial judge has engaged in conduct that gives rise to the appearance of a lack of impartiality in the mind of a reasonable member of the public. United States v. Torkington, 874 F. 2d 1441 (11th Cir. 1989).

C.    STATEMENT OF THE FACTS

On May 22, 2020 after Defendant Rolfe stopped Plaintiff for diving under

the influence, he slammed Plaintiff to the highway asphalt and caused Plaintiff

injury which required two shoulder operations (R1-1).[1]

Paragraphs 7-9 alleged:

7.

Plaintiff behaved in a respectful manner to
Defendant Rolfe. He was polite and never raised
his voice. At no time did Plaintiff use any force
against the Defendant or do anything that would
have provided the defendant with a legal basis to
use force against him.

8.

Because the Plaintiff did not comply with
the Defendant's Rolfe command as quickly as the
officer would have liked, the Defendant grabbed
him and after threw him to the ground, thoroughly
breaking his collar bone among other minor
injuries.

9.

Plaintiff's injury required two surgeries to
repair his shoulder. [2]

---

[1] This case comes to the Court on a F.R.C.P. 12(c) motion. Plaintiff objects to any
consideration of the video as it is not central to Plaintiff's claim and is not referred
to in the complaint. Nevertheless, he refers to the videotape only after setting out
the facts based solely on his complaint. Compare, R1-20-9 "The relevant facts as
presented by the parties or as disputed in the video recordings are as follows."
(emphasis added)
[2] The allegations against the city are in Count Two.

Attached to the Defendant's answer was a narrative (R1-9-3). The narrative

reveals that Defendant conducted a number of sobriety tests. Defendant says that

Plaintiff resisted and the officer wrapped:

> my right arm over Mr. Johnson's right shoulder
> and took him to the ground where he continued to
> resist and refusing to place his shoulders and took
> him to the ground where he continued to resist…
> Mr. Johnson complained of shoulder pain… Grady
> unit #754 responded and diagnosed Mr. Johnson
> with a dislocated shoulder

The videotape does not refute any of what is alleged in the complaint.

Indeed, the various descriptions, of what force was used, call out for a fact

finder to make that decision.

When Defendant's superior arrived, this is what Defendant told him:

> "I guess he's got a CDL and he was begging me
> and pleading to let her drive he's just trying to get
> home not wanting to do any tests. He did HTM for
> me, but didn't want to do any further tests. So I
> placed him under arrest from what I had already
> seen and he started tensing up and started to pull
> his hand away. Just wanted to turn around and
> keep trying to talk and wouldn't put his hands
> behind his back. So I just wrapped my hand around
> his shoulder and put him to the ground" 23:36:18-
> 23:36:45.

The Defendant was then asked by his superior if he went to the ground

lightly? 23:36:51. The Defendant said "it was moderate and I landed on top of

him." 23:37:05

After some discussion with his supervisor, the Defendant said "it was certainly a takedown not a soft arm (lock?)… it was more like a toss or throw." 23:38:38-47.

After viewing the videotape, the Court determined at (R1-20-6):

> Rolfe then swung Johnson around with Rolfe's arm wrapped around Johnson and <u>threw him to the ground</u>

Plaintiff submits that neither the District Court nor the Court can resolve the contradiction and as in any 12(c) motion the facts are those set out in paragraphs 8 and 9- that is facts from Plaintiff's complaint.

When Defendant Rolfe first stopped Plaintiff's vehicle:

He talked with the passenger, the officer then came over to Mr. Johnson and begins engaging with Mr. Johnson. 22:58:37. The officer asked to pat down Mr. Johnson and he quietly and patiently complied. 22:59:15-22:59:23. He was asked by the officer to do the Horizontal Gaze test which the Mr. Johnson performed. 23:03:10. The officer asked to do the walk and turn test and Mr. Johnson shaking from fear said he just got his CDL back and was afraid he would lose his license. He said that he is afraid to take the exam and again requested to go home. 23:08:50.

Mr. Johnson requested the Defendant to let the passenger drive and let him go home. 23:09:06. All the while Mr. Johnson requested that the Defendant allow

him to leave and allow the passenger to drive, the Defendant requested that Mr. Johnson submit to field sobriety tests. 23:06:30 -23:14:13. Defendant grabbed Mr. Johnson by his left arm and moved him to the back of Mr. Johnson's vehicle. 23:147:14- 25 There was no resistance. Defendant then ordered Mr. Johnson to put his hands behind his back which he did briefly and the officer cuffs his land hand. 23:14:26.

Mr. Johnson then turned to plead his case by again gesturing with his right hand towards the passenger and turning to the Defendant. 23:14:27-32. The Defendant gave no warning that if he continued that he would be forced to escalate the situation and use force. Mr. Johnson was then slammed to the ground. 23:14:32:-35. How, we do not know because it is not visible on the video. While on the ground, Mr. Johnson said that he is not resisting and the Defendant stated that he was resisting. 23:14:40-44. The passenger told him to calm down Mr. Johnson said ok and was cuffed. 23:14:48-50 The Officer then called for a supervisor to come to the scene. 23:15:08-15. Mr. Johnson was taken to the car where he informed the officer that his shoulder was injured. 23:18:04:24. After being placed in the squad car, the Defendant checked on the passenger and searched the car. 23:19:27-23:23:30. Upon return to the vehicle Mr. Johnson complained that his shoulder was injured and that he was not resisting. 23:28:40-23:29:30.

7

At no point during this discussion did the Defendant say that Mr. Johnson was belligerent. At no point in the discussion did the Defendant say that Mr. Johnson offered violence. At no point in the discussion with the supervisor did the Defendant say that Mr. Johnson resisted arrest. In fact, the Defendant agreed that Mr. Johnson removed his hand to continue to plead his case and he slammed him and landed on top of him. Had he been an NFL player, a yellow flag would be thrown. [3]

The Court's rendition of the facts at pages 4-7 (R1-20-4-7) are not completely wrong, but neither are they right.

At no time does the Court cite to Plaintiff's complaint. It does not seem to occur to the Court that even after Scott v. Harris, 550 U.S. 372 (2007) that the Defendant's narration of what the videotape shows is not controlling. (At R1-20-7, "Rolfe stated that he used 'moderate force''). Nor does the Court ever harmonize the finding of being thrown to the ground R1-20-6 or "plac[ing] him on the ground. (R1-20-7). Nor does the Court consider that the ground was not grassy but asphalt, or the extent of Plaintiff's injuries.

---

[3] In the NFL, when tackling a passer who is in a defenseless posture (e.g., during or just after throwing a pass), a defensive player must not necessarily or violently throw him down or land on top of him with all or most of the defender's weight. Rule 112 section 2 article 13(2) of the official NFL rule book (2011 version).

## IV. SUMMARY OF THE ARGUMENT

1). A videotape is not a document under F.R.C.P. 10(c) because it is not "a written instrument" under any definition of plain statement. "Courts must give the Federal Rules of Civil Procedure their plain meaning." Business Guides v. Chromatic Communication, 498 U.S. 533 (1991); Cantrell v. McClure, 805 Fed. Appx. 817 (11th Cir. 2020), an unpublished case is not to the contrary because "the video footage… was unreferenced in the complaint and attached to Defendant's answer." Id. at fn. 2. The videotape herein was not referred to in the complaint. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) is also a case, whereas the district court noted "the video were referenced in the complaint." In other words, the prior Circuit cases are dicta.

Cantrell and Horsley are both read as coming within the incorporation by reference doctrine- that is that the "written instrument" must be attached to the motion to dismiss (assuming a videotape is a written instrument) and the document must be central to Plaintiff's claim. Crawford's Auto Center, Inc. v. State Farm Mutual Automobile Ins. Co., 945 F.3d 1150, 1162 (11th Cir. 2019).

The Court erred in considering the videotape.

4). Unless the Court below correctly held that Plaintiff did not state a claim against the individual Defendant (as opposed to finding that he had qualified immunity) the Court erred in dismissing the Monell claim against the City. Compare Hinton v.

City of Elwood, 997 F.2d 774, 783 (10th Cir. 1993) with Favors v. City of Atlanta,

849 Fed. Appx. 813 (11th Cir. 2022).

5). The Court erred in holding as a matter of law that Plaintiff had not stated a

cause of action under state law because Defendant had official immunity. See

Quinnette v. Reed, 805 Fed. Appx. 696 (11th Cir. 2020).

The Court below appears to have held that because the injury Mr. Johnson

suffered was de minimis that it did not have to examine the Graham v. Connor, 490

U.S. 386 (1989) factors. The Court erred in two ways.

To begin with, this is hardly the "careful balancing of the nature and quality

of the intrusion on the individual's Fourth Amendment interests against the

countervailing governmental interests stake" required by Graham.

More to the point, since when is force that requires two shoulder surgeries

de minimis? To get to the tortured result, the Court relies on a nonprecedential

case, Taylor v. Taylor, 649 Fed. Appx. 737 (11th Cir. 2016) as though the legal

landscape on the issue had not been changed by Wilkins v. Gaddy, 559 U.S. 34

(2010) and this Court's authority following Wilkins v. Gaddy, Saunders v. Duke,

766 F.3d 1262 (11th Cir. 2014) and Stephens v. DeGiovanni, 852 F.3d 1298 fn. 33

(11th Cir. 2017). Indeed, Stephens cites to Slicker v. Jackson, 215 F.3d 1225 (11th

Cir. 2000) where this Court had noted that "even if Slicker were unable to

demonstrate that he suffered any actual injury, under controlling case law, the

10

district court erred in not allowing Slicker to seek nominal damages." In this case,

Plaintiff has real injuries. <u>Wilkins</u> quoted Judge Blackmun's earlier concurring

opinion in <u>Hudson v. McMillian</u>, 503 U.S. 1, 14 (2010):

> The Court today appropriately puts to rest a
> seriously misguided view that pain inflicted by an
> excessive use of force is actionable under the
> Eighth Amendment only when coupled with
> "significant injury," e. g., injury that requires
> medical attention or leaves permanent marks.

Of course, in this case, the injury required medical attention and will leave

permanent marks.

Indeed, the Court went on to say:

> The extent of injury may also provide some
> indication of the amount of force applied…
> [However] a inmate who complained of a "push or
> shove" that causes <u>no discernable injury</u> certainly
> fails to state a valid excessive force claim.

(emphasis added). 559 U.S. at 38.

The Court erred in holding that an injury requiring two operations was de

minimis.

The three <u>Graham</u> factors and the extent of the injury suffered clearly

favored Plaintiff.

Plaintiff was arrested for driving while under the influence, which is a

misdemeanor under O.C.G.A. § 40-6-91. This factor favors Plaintiff; <u>Fils v. City of</u>

<u>Aventura</u>, 647 F.3d 1272 (11th Cir. 2012).

11

Since the Court agreed that Plaintiff "was not threatening Rolfe" (R1-20-13) the second factor favored Plaintiff.

Plaintiff was not actively resisting. See Fils v. City of Aventura, 647 F.3d 1272, 1288 (11th Cir. 2012) ("Similarly resisting arrest without force does not connote a level of dangerousness that would justify a greater use of force"). Compare Mercado v. City of Orlando, 407 F.3d 1152 (11th Cir. 2005) with Ingram v. Kubik, 30 F.4th 1241 (11th Cir. 2022); Stryker v. City of Homestead, 976 F.3d 769 (11th Cir. 2020); Brand v. Casal, 877 F.3d 1253, 1264 (11th Cir. 2017).

Finally, there is the extent of the injury, an important consideration, Sebastian v. Ortiz, 877 F.3d 1253, 1264 (11th Cir. 2017).

When the three Graham factors support Plaintiff and the injury is severe, the Court routinely denies qualified immunity to an officer. See e.g. Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002).

Finally, the case law cited in the brief, see e.g. Ingram v. Kubik, 30 F.4th 1241 (11th Cir. 2022) (citing the standard "that a broader clearly established principle should control the novel facts in this situation") mandates that the officers enjoyed immunity. Indeed, Stephens v. City of Homewood, 976 F.3d 769 (11th Cir. 2020) is also clearly established law. See Brand v. Casal, 877 F.3d 1253 fn. 10 (11th Cir. 2017).

## V. ARGUMENT AND CITATION OF AUTHORITY

### A. A VIDEOTAPE IS NOT A DOCUMENT UNDER F.R.C.P. 10(c)

Despite the dicta in <u>Cantrell v . McClure</u>, 805 Fed Appx 817 (11th Cir. 2020) and <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002) whether a videotape is a document is an unsettled question in the circuit.

A good place to start is with F.R.C.P. 10(c) which reads in pertinent part, "A copy of a written statement that is an exhibit to a pleading is part of the pleading for all purposes.

Courts must give the Federal Rules of Civil Procedure their plain meaning. <u>Business Guides, Inc. v. Chromatic Communities Enterprises. Inc.</u>, 498 U.S. 533, 540 (1991). While the Rules "should be liberally construed... they should not be expanded by disregarding plainly expressed limitations." <u>Schlagenhauf v. Holder</u>, 379 U.S. 104 (1964).

In plain English, a video is not a written statement.

In <u>Rose v. Bartle</u>, 871 F.2d 331 fn.3 (3rd Cir. 1989) the Court explained:

> Fed.R.Civ.P. 10(c) states "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," <u>accord</u> <u>Aralac, Inc. v. Hat Corp. of Am.</u>, 166 F.2d 286, 289 n. 2 (3d Cir. 1948), and respected commentators have observed that:
>
> [b]ecause Rule 10(c) provides that the writing becomes a part of the pleading for all purposes, the contents of any attached writing must be

13

considered in determining the existence of a claim
for relief or a defense on a motion to dismiss for
insufficiency, or in appealing from a dismissal, or
in deciding a motion for summary judgment.
5 C. Wright A. Miller, <u>Federal Practice and
Procedure</u> § 1327, at 490-91 (footnotes omitted);
<u>see also</u> <u>Park-In Theatres, Inc. v. Paramount-
Richards Theatres, Inc.</u>, 81 F. Supp. 466, 470
(D.Del. 1948) (considering on a Rule 12(b)(6)
motion the terms of the operative contract which
had been incorporated as an exhibit), aff'd per
curiam, 185 F.2d 407 (3d Cir. 1950), cert. denied,
341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373
(1951).
The case law demonstrates, however, that the types
of exhibits incorporated within the pleadings by
Rule 10(c) consist largely of documentary
evidence, specifically, contracts, notes, and other
"writing[s] on which [a party's] action or defense is
based", 5 C. Wright A. Miller, <u>supra</u>, § 1327, at
489.

<u>See</u> <u>Boykin v. Gray</u>, 895 F. Supp. 2d 199, 205 fn. 5 (D.D.C. 2019) aff'd 650 Fed

Appx 42 (D.C. Cir. 2016).

In <u>Mora v. City of Chula Vista</u>, 2021 WL 1165054 (S.D. Cal. 2021) the

Court noted <u>enter alia</u> that "black and white photos of Plaintiff and his injuries"

were evidentiary material that did not fall under F.R.C.P. 10(c). Nor is a surgery

photograph, <u>Hoak v. Attorney General</u>, 2013 WL 2382722 (D. Ida. 2013) slip at 2;

or x-ray or a photograph, <u>Nkemakolam v. St. John's Military Sch.</u>, 876 F. Supp. 2d

1240, 1246 -1247 (D. Kans. 2012).

14

Nor is a videotape an instrument. <u>Brewers v. Aftermath Entertainment</u>, 254

F. Supp. 2d 629, 639 (E.D. Mich. 2003). There the Court noted:

> Rule 10(c) of the <u>Federal Rules of Civil Procedure</u> provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Rule 10(c) is permissive, however, and a plaintiff is not obligated to attach to the complaint the "written instrument" upon which the action is permissed. <u>See</u> <u>Weiner v. Klais & Co., Inc.</u>, 108 F.3d 86, 89 (6th Cir. 1997). If, however, the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit. <u>Id.</u> "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." <u>Id</u>. Thus, although a court may not consider matters outside the pleading on a motion to dismiss," '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.' <u>Id.</u> (quoting <u>Venture Assocs. Corp. v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993))).
>
>    Plaintiffs did not attach the Concert DVD to the First Amended Complaint. Rather, Defendants have filed a copy of the Concert DVD and a videotape of the segment at issue as exhibits in support of their Motions. Defendants assert that the Court should consider the Concert DVD as incorporated into the First Amended Complaint on the grounds that the DVD is central to Plaintiff's case and is referred to throughout the First Amended Complaint. The Court disagrees with Defendants' conclusions for several reasons. Plainly, the Concert DVD is not a "written instrument," and the Court is not convinced that it may construe the DVD as such for the purpose of

incorporation under Rule 10(c). The Seventh
Circuit "has interpreted the term 'written
instrument' as used in Rule 10(c) to include
documents such as affidavits, and letters as well as
contracts, and loan documentation." Northern Ind.
Gun & Outdoor Shows, Inc. v. City of South Bend,
163 F.3d 449, 453 (7th Cir. 1998) (citations
omitted); see also Levenstein v. Salafsky, 164
F.3d 345, 347 (7th Cir. 1998) ("While documents
attached to a motion to dismiss are considered part
of the pleadings if they are referred to in the
Plaintiff's complaint and are central to his claim,
this is a narrow exception aimed at cases
interpreting, for example, a contract.") (citation
and internal quotation marks omitted) (emphasis in
original). Obviously, the Concert DVD does not fit
into one of these categories.[4]

In Bordeur v. City of New York, 2002 WL 424688 (S.D.N.Y. 2002) the

Court refused to consider videotapes:

In support of their motion to dismiss, defendants
reference a number of documents and a videotape
that are extrinsic to the complaint. This Court may
consider documents incorporated by reference in
the pleadings or documents either in plaintiff's
possession or of which a plaintiff had knowledge
and relied on in bringing the suit. Brass v.
American Film Techns. Inc., 987 F.2d 142, 150
(2d Cir. 1993). Thus, while it is appropriate to
consider certain documents supplied to the Court

---

[4] Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) cites Northern Ind. At the
same page. As stated at 453, the Seventh Circuit wrote "Thus consistent with our
prior decisions, the District Court properly included the attached letters written by
Hedman in its consideration of Century Center's Rule 12(c) motion. The footnote
of the Seventh Circuit opinion concludes "We, therefore, may consider only
NSGO's complaint with its four attachments and Century Carter's answer and
complaint."

by the City-the postcard sent to City Hall, the
orders of protection and the search warrant
application-this Court declines the invitation to
consider a videotape of the events and thus
effectively convert this motion into one for
summary judgment. See Fed.R.Civ.P. 12(c). At the
time defendants filed this motion, discovery had
not been completed.

In Lesowitz v. Tittle, 2019 WL 3006428 (N.D. Ga. 2019) the Court

explained:

Importantly, In re Omnicare, and the cases on
which it relied, considered the incorporation of
public documents. Other courts in the Sixth Circuit
have followed In re Omnicare, and allowed the
incorporation of documents, but not "extraneous or
evidentiary material that should not be attached to
the pleadings." E.g., Bowens v. Aftermath Entm't,
254 F. Supp. 2d 629, 640 (E.D. Mich. 2003)
("[T]he Court concludes that the DVD is the sort
of lengthy exhibit [] containing extraneous or
evidentiary material [that] should not be attached
to pleadings.'" (emphasis omitted)); see also e.g.
Watermark Senior Living Retirement Cmtys., Inc.,
v. Morrison Mgmt. Specialists, Inc., 905 F.3d 421,
425-26 (6th Cir. 2018) (allowing incorporation of
documents from other court proceedings).
Likewise, other federal courts have found
incorporation appropriate only for documents such
as affidavits, letters, contracts, and loan
documentation. See e.g. N. Ind. Gun & Outdoor v.
City of S. Bend, 163 F.3d 449, 453 (7th Cir. 1998)
("Historically, this Court has interpreted the term
'written instrument'... to include documents such
as affidavits, and letters, as well as contracts and
loan documentation[.]" (citations omitted)).
Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir.
1998) ("While documents attached to a motion to

dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim, this is a narrow exception aimed at cases interpreting, for example, a contract." (internal quotation marks and citation omitted)); <u>Desert Palace, Inc. v. Khatchaturian</u>, No. 2:12-CV-00247-KJD-GWF, 2012 WL 2389628, at 1-2 (D. Nev. June 22, 2012) (denying incorporation of video recordings into defendant's motion to dismiss)

<u>See</u> <u>Rivera v. Robinson</u>, 2019 WL 1326588 (E.D. La. 2019) .

Nevertheless, the Court below held that the videotape would be considered under current Eleventh Circuit law. The court erred in doing so (R1-20).

## B. ELEVENTH CIRCUIT PRECEDENT DOES NOT MANDATE A DIFFERENT RESULT

There are any number of reasons why <u>Cantrell v. McClure</u>, 805 Fed Appx. 817 (11th Cir. 2020) is not controlling.[5] First it is a nonprecedential opinion. <u>See</u> <u>Ray v. McCullough, Payne, and Haane LLC</u>, 883 F.3d 1107, 1109 (11th Cir. 2016). Secondly it is clear dicta. <u>See</u> <u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276, 1298 (11th Cir. 2016); <u>Talamantes-Enriquez v. U.S. Attorney General</u>, 12 F.4th 1340 fn. 1 (11th Cir. 2021).

As the Court noted in <u>Cantrell</u> at fn.2 "the video footage... was referenced in the complaint..." Such reason supported the consideration. The next sentence:

---

[5] The District Court noted, 2018 WL 11170098 (N.D. Ga. 2015) ("The Court may consider these videos... because the videos are referenced in the complaint.")

> A Court may consider an exhibit attached to a
> pleading or a motion to dismiss without connecting
> the motion into one for summary judgment, where
> the exhibit is central to the Plaintiff's claim, and its
> authenticity is unchallenged.

Nor does the citation to Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir.

2002) help. In Horsley, the Plaintiff, in fact quoted from the complaint, or as this

Court put it "the video footage... was referenced in the complaint..." (id. at fn. 7).

As this Court explained at 1133 "In his complaint, Horsley quoted Feldt's alleged

statements from an article and a CNN Broadcast." The Court was applying the

standards set out in Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

> Our prior decisions also make clear that a
> document need not be physically attached to a
> pleading to be incorporated by reference into it; if
> the document's contents are alleged in a complaint
> and no party questions those contents, we may
> consider such a document provided it meets the
> centrality requirement imposed in Horsley.

Id. at 1276.

But even if the Court's decision in Cantrell is not dicta, it must be based on

the phrase "where the exhibit is central to the Plaintiff's claim." See e.g. Quinette

v. Reed, 805 Fed Appx 696, 700 (11th Cir. 2000). (Video central to claim and

referred to in the complaint).

In other words, neither Cantrell (to the extent an unreported decision is

precedential) or Horsley are lacking precedential value. But Horsley stands solely

for the holding (set out in <u>Horsley</u>) quoting <u>Levenstein v. Salafsky</u>, 164 F.3d 345,

347 (7th Cir. 1998).

> While documents attached to a motion to dismiss
> are considered part of the pleading if they are
> referred to in Plaintiff's complaint and <u>are central</u>
> to his claim... this is a narrow exception aimed at
> cases interpreting, for example, a contract.

<u>Horsley</u> passed over the term "written instrument" 304 F.3d at 1134 but

notes:

> It would seem to follow that if an attachment to
> answer is a 'written instrument,' it is part of the
> pleadings.

<u>Horsley</u> goes on to note:

> Our Rule 12(b)(6) decisions have adopted the
> "incorporation by reference" doctrine,, <u>see</u> <u>In re
> Silicon Graphics Inc. Securities Litigation</u>, 183
> F.3d 970 (9th Cir. 1999), under which a document
> attached to a motion to dismiss may be considered
> by the Court without converting the motion into
> one for summary judgment only if the attached
> document is: (1) central to the plaintiff's claim;
> and (2) undisputed. <u>See</u> <u>Harris v. Ivax Corp.</u>, 182
> F.3d 799, 802 n. 2 (11th Cir. 1999). "Undisputed"
> in this context means that the authenticity of the
> document is not challenged. <u>See</u> <u>e.g.</u>, <u>Baddall v.
> State Street Bank and Trust Co.</u>, 137 F.3d 12, 16-
> 17 (1st Cir. 1998) <u>GFF Corp. v. Associated
> Wholesale Grocers, Inc.</u>, 130 F.3d 1381, 1384 (10th
> Cir. 1997); <u>Branch v. Tunnell</u>, 14 F.3d 449, 454
> (9th Cir. 1994). Given that the operative rule
> language is identical and that the provisions serve
> the same purpose, we believe that the Rule

12(b)(6) incorporation by reference doctrine
should apply in Rule 12(c) cases as well.

In Roberts v. Carnival Corporation, 824 Fed Appx 825 (11th Cir. 2020) the

Court quoted Horsley and Day:

But an exception to this rule applies if a document
attached to the complaint is referred to in the
complaint, central to the Plaintiff's claim, and of
undisputed authenticity.

There are then two requirements to the incorporation by reference doctrine

as set out in Horsley.

1). The written instrument (assuming a videotape is a written instrument)

must be attached to a motion to dismiss [6] and

2). The documents must be central to the Plaintiff's claim. In Roberts, this

Court held the "ticket contract is not central to her claims because it is not a

necessary or central part of Roberts' efforts to show that she was injured due to

Carnival's negligence." Id. at 826. Although the estimates may turn out to be

important evidence at trial, they were not so central to warrant consideration at the

motion to dismiss stage." Crawford's Auto Center. Inc. v. State Farm Mutual

_____

[6] Horsley cites Harris v. Ivox Corp, 182 F.3d 799 fn.2 which cites Wright & Miller
for the ordinary case that the document must be attached to the complaint and
Brooks v. BlueCross and Blue Shield, 116 F.3d 1364, 1369 (11th Cir. 1997). But
the citation at 1369 discusses instances where the Plaintiff refers to certain
documents in the complaint and the Seventh Circuit case referenced to at the same
pages says the same thing."

Automotive Ins. Co., 945 F.3d 1150, 1162 (11th Cir. 2019). Accord Oppenheimer

v. Mountain States Health Alliance, 2020 WL 1967235 slip at 2 (E.D. Tenn. 2020).

Compare Rahmaan v. McQuilkin, 2021 WL 86842 (N.D. Ga. 2021) (slip at 3) with

Gerbascher v. City of New York, 134 F. Supp. 3d 711, 719 (S.D.N.Y. 2015).

The Court erred in considering the video at all.

C. THE COURT ERRED IN FINDING PLAINTIFF'S INJURIES DE MINIMUS

There are three facts as set out in the Court's opinion taken from the

transcript and they are contradictory.

At R1-20-6:

> Rolfe then swung Johnson around with Rolfe's
> arm wrapped around Johnson and threw him to the
> ground.

At R1-20-7:

> A supervisor was called to the scene and Rolfe
> explained that he wrapped his arm around Johnson
> and placed him on the ground.

At R1-20-7:

> Johnson told Rolfe that Rolfe had dislocated his shoulder.

The complaint at paragraph 8 states (R1-1-2):

> Defendant grabbed [Plaintiff] and after [sic] threw
> him to the ground, thereby breaking his collar bone
> among other minor injuries

At no point does the Court refer to paragraph 8 of the complaint.

The complaint at paragraph 9 states (R1-1-2):

22

Plaintiff's injury required two surgeries to regain his shoulder.

At no point does this Court refer to paragraph 9 of the complaint (R1-1-2).

The Court places primary emphasis on Taylor v. Taylor, 649 Fed. Appx. 737 (11th Cir. 2016), never mind that the case is nonprecedential. [7] Compare Crocker v. Beatty, 995 F.3d 1232 fn. 6 (11th Cir. 2021) with Ray v. McCullough Payne & Haan, LLC, 883 F.3d 1107, 1109 (11th Cir. 2016).

The Court also trots out the familiar Judge Friendly statement (R1-20-13) that "not every push or shove... violates the Fourth Amendment." This is true, but not every push or shove results in two surgeries either (R1-21-2).

Neither Taylor, supra, Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000) nor Durrothy v. Pastor, 351 F.3d 1080 (11th Cir. 2003) calls an injury that results in two surgeries de mimimis.

Although Taylor cited to Saunders v. Duke, 766 F.3d 1262 (11th Cir. 2014) Saunders cited by the Court below supports Plaintiff:

> The argument that Mr. Saunders did not suffer a constitutionally cognizable injury fares no better. First, Mr. Saunders alleged significant injuries resulting from having his head slammed against the pavement: lacerations, injuries to his teeth and jaw, damage to his left eardrum, and emotional distress. Such injuries are not de minimis. Second, in the context of an Eighth Amendment excessive force claim, the Supreme Court has recognized that "[a] [defendant] who is gratuitously beaten by

---

[7] As pointed out at R1-14 fn. 6.

guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38-39, 130 S. Ct. 1175, 175 L.Ed.2d 995 (2010) (explaining that the "core judicial inquiry" for an excessive force claim under the Eighth Amendment is not based on the extent of the plaintiff's injury, but rather on "the nature of the force" used, i.e., "whether [the force] was nontrivial and was applied maliciously and sadistically to cause harm' "). "To conclude... that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an excessive force claim improperly bypasses [the] core [judicial] inquiry," which is the nature of the force. Id. at 39, 130 S.Ct. 1175. We see no reason why the same rationale should not apply in a Fourth Amendment excessive force case. See Hadley, 526 F.3d at 1330 (officer's punch to the stomach of a handcuffed and non-resisting suspect violated the Fourth Amendment). After all, as we held in Slicker, 215 at 1231-32, a plaintiff claiming excessive force under the Fourth Amendment can seek nominal damages if he does not have compensable injuries.

In Stephens v. DeGiovanni, 852 F.3d 1298 fn. 33 (11th Cir. 2017) this Court

explained:

In the context of an Eighth Amendment excessive force claim, the Supreme Court noted the "core judicial inquiry" for an excessive force claim under the Eighth Amendment is not based on the extent of the plaintiff's injury, but rather on "the nature of the force" used. Wilkins v. Gaddy, 559 U.S. 34, 39, 130 S. Ct. 1175, 1179, 175 L.Ed.2d 995 (2010). The Court explained a plaintiff "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely

24

because he has the good fortune to escape without serious injury." Id. at 38, 130 S. Ct. at 1178.3

As the Court earlier noted at 1324-1327:

While "the typical arrest involves some force and injury," Reese, 527 F.3d at 1272 (citation and internal quotation marks omitted), the amount of force used by an officer in seizing and arresting a suspect "must be reasonably proportionate in the need for that force," Lee, 284 F.3d at 1198. See Jones v. Buchannan, 325 F.3d 520, 528 (4th Cir. 2003) (recognizing a court considering an excessive-force case should "view the evidence in full context, with an eye toward the proportionality of the force in light of all the circumstances" (citation and internal quotation marks omitted) (emphasis added)). In applying the Graham objective-reasonableness: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Vinyard, 311 F.3d at 1347 (citing Lee, 284 F.3d at 1198; Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986))). While the first two of these factors were subsumed in our discussion of the Graham factors, this case specifically requires us to focus on the physical evidence of the force Deputy DeGiovanni used in arresting Stephens, measured by the extent of his injuries caused by Deputy DeGiovanni during Stephen's seizure and arrest. In analyzing the injury factor, we distinguish the Fourth Amendment, excessive-force cognizable injuries suffered by Stephens resulting from the force Deputy DeGiovanni inflicted upon him from de minimis injuries.

Determining whether an injury occurring during an arrest resulted from excessive force by the officer depends on the particular circumstances of the arrest. When qualified immunity has been pled in a

25

Fourth Amendment, excessive-force case, the
review centers on whether the force used was
objectively reasonable from the perspective of a
reasonable officer on the scene. Graham, 490 U.S.
at 396, 109 S.Ct. at 1872. The nature and extent of
physical injuries sustained by a plaintiff are
relevant in determining whether the amount and
type of force used by the arresting officer were
excessive. See West, 767 F.3d at 1066-67
(reversing summary judgment based on qualified
immunity in a § 1983 case for courthouse security
officer, who grabbed an entering attorney's cell
phone she was holding to her ear, jerked her hand
and arm from her face toward him while he
"squeezed her hand and fingers hard and twisted
her wrist back and forth, causing her severe pain,"
which resulted in her going to a hospital
emergency room for "medication and a split for
her wrist," seeing "a hand specialist and
[undergoing] a carpal tunnel release procedure on
the wrist that [the security officer] had grabbed and
twisted"); Saunders v. Duke, 766 F.3d 1262, 1265-
66 (11th Cir. 2014) (reversing dismissal of
plaintiff's case on qualified immunity in § 1983
case, where handcuffed arrestee, holding his face
up to keep from being burned by the hot pavement
on which he was lying, was slammed down by one
of the officers "with extreme force," causing
"lacerations, injuries to his teeth and jaw, damage
to his left eardrum, and emotional distress due to
his head striking the pavement"); Galvez, 552 F.3d
at 1244, 1245 (vacating summary judgment on
qualified immunity in a § 1983 case, because of
force used in arrest by the officer's "repeatedly
slamming" plaintiff doctor, charged with
misdemeanors, "concrete wall with force sufficient
to break his ribs and cause a leaking aneurysm" as
well as psychological harm to be unconstitutional
excessive force); Davis, 451 F.3d at 764 (reversing
summary judgment on qualified immunity in a §

26

1983 case and finding force used to effectuate arrest was not de minimis, where in arresting plaintiff, canine-unit officer "threw [plaintiff] very hard into the dog cage causing him to hit his head on the top of the car as he entered" and from the officer's pushing on his shoulder plaintiff had told the officer was injured, plaintiff sustained "a torn rotator cuff in his right shoulder, for which he underwent a surgical repair"); Priester v. City of Riviera Beach, 208 F.3d 919, 923-24, 928 (11th Cir. 2000) (reinstating jury verdict of excessive force and awards of compensatory and punitive damages in a § 1983 case for officers' releasing a police dog on plaintiff lying down as instructed, which resulted in fourteen puncture wounds on both legs from dog bites); Smith v. Mattox, 127 F.3d 1416, 1419-20 (11th Cir. 1997) (affirming denial of qualified immunity in a § 1983 case, where unlawful force in arrest was "readily apparent even without clarifying caselaw" when the officer was on plaintiff's back and, in handcuffing him, broke plaintiff's arm requiring surgery for multiple fractures, although plaintiff was not resisting).

The extent of Stephens's injuries is the most telling factor in revealing the unprovoked force exerted on him by Deputy DeGiovanni.
The district judge, however, concluded "that any force used by Defendant DeGiovanni was de minimis." Order Granting Def.'s Mot. for Summ. J. at 13. She based her conclusion on the "highly similar" facts in Woodruff v. City of Trussville, 434 F. App'x 852 (11th Cir. 2011), and Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997). Order Granting Def.'s Mot. for Summ. J. at 13. But "the actual force used and the injury inflicted were both minor in nature" in each of these cases. Jones, 121 F.3d at 1460.

27

> In stark contrast are the medically documented severe, permanent injuries sustained by Stephens from Deputy DeGiovanni's unprovoked and completely unnecessary frontal-body blows to Stephens's chest and throwing him against the car-door jamb in the course of arresting him. Deputy DeGiovanni has argued on appeal Stephens's arrest injuries were de minimis. But the amount of force used by Deputy DeGiovanni in arresting Stephens, which caused his severe and permanent injuries, documented by treating physicians, forecloses any de minimis argument by Deputy DeGiovanni. Cf. Nolin v. Isbell, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) ("Appellee had minor bruising which quickly disappeared without treatment.").

(footnote omitted).

While Plaintiff's injuries were not severe, a jury could easily find an injury requiring two surgeries de minimis under the circumstances.

It is routinely stated that "some force" may regrettably be used in making an arrest. The District Court herein stated the same thing. As the Court stated in Argo v. Glasscox, 903 F.3d 1207, 1214 (11th Cir. 2018):

> Fourth Amendment jurisprudence has long recognized that the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id.
> To balance the necessity of using some force in making an arrest against the arrestee's Fourth Amendment rights, we "must evaluate a number of factors, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer[ ] or others, and whether he is actively resisting arrest or attempting

28

> to evade arrest by flight.'" Lee, 284 F.3d at 1197-
> 98 (quoting Graham, 490 U.S. at 396, 109 S.Ct.
> 1865 ). " Graham dictates unambiguously that the
> force used by a police officer in carrying out an
> arrest must be reasonably proportionate to the need
> for that force." Id. at 1198. In deciding whether the
> officer's force is excessive, we also consider as
> relevant the nature and extent of the arrestee's
> injuries. Id.

(footnote omitted). Indeed, this Court in Argo noted that the officers "undeniably

was justified in using force to make an arrest." Id. at 1215. The injury suffered was

that he bled all over the place and suffered possible Post Traumatic Stress

Disorder.

However, there is not one Eleventh Circuit case that speaks of an injury

requiring one surgery, let alone two, as de minimis.

In Stephens, supra, the officers slapped Plaintiff, and Defendant, "using his

full body weight, slapped [Plaintiff] hard in his chest slamming him into the

driver's seat. He hit Plaintiff a second time and stepped on his foot and threw

Plaintiff against the car- door frame. The doctor diagnosed Plaintiff with a number

of injuries. Id. at 1310.

In Davis v. Williams, 451 F.3d 759 (11th Cir. 2006) Plaintiff was arrested.

The two officers:

> grabbed him from behind, throwing his arm behind
> his back and handcuffed him. Davis tried to tell
> Becht that he had an injured shoulder and was in
> pain.

Becht dragged Davis to the police car, which was a
canine unit, and forced him down on the ground
again, while pulling hard on his shoulder. In the
meantime, Bright pulled the police dog out of its
cage in the back of the unit and Becht dragged,
pushed, or threw Davis very hard into the dog cage
causing him to hit his head on the top of the car as
he entered. Still handcuffed, Davis slid across the
bottom of the cage, hit his head and shoulder on
the opposite side of the cage and had to lie down
on the metal floor of the cage. Davis was then
driven in the cage, not to the police station, but to a
nearby parking lot to wait for another vehicle to
transport him to the police station. After the
incident, Davis' neck and thumb were swollen, and
he could not move his arms. He was diagnosed
with a torn rotator cuff in his right shoulder, for
which he underwent a surgical repair.

Id. at 763-764. The Court held that even if the arrest was based on probable cause,

excessive force had been used.

In Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998) there

was no indication that the Plaintiff ever threatened "Miller or any of the officers

with physical violence."

The district court properly denied the officers'
motion for summary judgment on these claims.
Neither Thornton nor Cravey was suspected of
having committed a serious crime, neither posed
an immediate threat to anyone, and neither actively
resisted arrest. Yet, on the facts viewed in the light
most favorable to the plaintiffs, the officers used
force in arresting both Thornton and Cravey. The
officers grabbed Thornton and wrestled him to the
ground, and threw Cravey on the hood of one of
the patrol cars before handcuffing him. Under the

> circumstances, the officers were not justified in
> using any force, and a reasonable officer thus
> would have recognized that the force used was
> excessive.

Id. at 1400. See also Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002) Lee v.

Ferraro, 284 F.3d 1188 (11th Cir. 2002).

There is a recent case Johnson v. City of Miami Beach, 18 F.4th 1267, 1271

(11th Cir. 2021) which finds "a small laceration to the mouth."

See Ingram v. Kubick, 18 F.4th 1241, 1252-1252 (11th Cir. 2022).

In other words, at the very least, a court should not be following earlier "de

minimis injury cases," compare Tobinick v. Novella, 884 F.3d 1110, 1118 (11th

Cir. 2018) or at least treading very lightly and carefully when it does.

Myers v. Bowman, 713 F.3d 1319 (11th Cir. 2013), an earlier case, applied a

de minimis standard but the force "was no more severe than the force that we have

described as de minimis and lawful in other cases, Id. at 1328. No one was

hospitalized or underwent surgery.

Duruthy v. Pastor, 351 F.3d 1080 (11th Cir. 2013) is another earlier case that

applied the de minimis text when the officers "forc[ed] Durruthy down to the

ground and plac[ed] him in handcuffs…" He was not hospitalized or underwent

surgery.

In Nolin v. Isbell, 207 F.3d 1253 (11ᵗʰ Cir. 2000) the injuries are set out at page 1256 where "the bruises disappeared quietly and he did not seek medical treatment." Id.

In Jones v. City of Dothan, 121 F.3d 1456, 1460 (11ᵗʰ Cir. 1997) the Plaintiff later received minor medical treatment for the pain in his knee."

In Gold v. City of Miami, 121 F.3d 1442, 1446 (11ᵗʰ Cir. 1997) "Gold suffered only skin abrasions for which he did not seek medical treatment."

### D. THE COURT FAILED TO PROPERLY APPLY THE GRAHAM V. CONNOR FACTORS AND ERRONEOUSLY GRANTED DEFENDANT QUALIFIED IMMUNITY

Although the District Court cites Graham v. Connor, 490 U.S. 386 (1989) (R1-20-15), it is mainly to cite the familiar Judge Friendly statement about "every push or shove." But see Quinette v. Reed, 805 Fed. Appx. 696 (11ᵗʰ Cir. 2020). Still the Court flatly fails to apply the three factors in Graham at all (R1-20-13-18) and the factors it does apply are applied wrongly. (This, despite setting out the proper test at R1-20-16).

The Court cities to Hinson v. Bias, 927 F.3d 1103, 1117 (11ᵗʰ Cir. 2019) which lists six factors, the last three factors are unsupported by citation to any previous case. [8]

---

[8] No reported case from this Circuit has ever cited Hinson again. Koger v. Carson, 53 Fed Appx 341 (11ᵗʰ Cir. 2021) and Longino v. Henry County, 791 Fed Appx 826 (11ᵗʰ Cir. 2019) are the only cases citing Hinson.

But <u>Hinson</u> is completely distinguishable from this case. <u>Hinson</u> had just stabbed someone. When the officers encountered him in his vehicle, the engine was still on. He refused to put his hands up immediately. <u>Id</u>. at 1109. Thereafter the on scene officer learned about the stabbing. When Defendant Bias encountered him, he told Hinson to put his hands up and turn away, but Plaintiff kept approaching him.

As this Court noted at 1110:

> As Bias and Hinson left the confined area between the truck and the checkout booth, Bias told Hinson to turn around and face away from him, so Bias could handcuff Hinson. Instead, Hinson continued moving towards Bias. Again, Bias commanded Hinson to stop and turn around. But Hinson did not comply.
> Anderson, who could see this occurring, attested that he then became concerned for Bias's safety, since Bias no longer had his weapon drawn, Bias was significantly smaller in stature than Hinson, and the officers had no way of knowing whether Hinson was armed. So Anderson grabbed Hinson's wrist and shoulder and performed a police maneuver known as a "straight arm bar takedown." As a result, Hinson was in a prone position on the ground, next to the checkout booth.
> Once Hinson was down, Bias stated, Bias attempted to handcuff him. Towards this end, Bias repeatedly instructed Hinson, whose hands were under him, to release his hands. But according to the officers, Hinson would not cooperate. Instead, Hinson struggled to keep his hands underneath his body.
> Bias started to become concerned that Hinson might be trying to reach a weapon while his were

33

> under his body. So to induce compliance with
> Bias's directive to Hinson to produce his hands for
> handcuffing, Bias made "five or six hammer
> strikes" to Hinson's upper-mid back area. In
> addition, Anderson gave one "pain compliance
> strike to Hinson's face" to obtain Hinson's
> cooperation. Hinson then released his hands from
> underneath his body, and Bias handcuffed him.

Other than the fact that a takedown maneuver was executed, none of the

facts in <u>Hinson</u> are similar to the facts herein. Mr. Hinson had abrasions, Mr.

Johnson required two surgeries. Indeed, the Court quoted from <u>Stephens v.</u>

<u>DeGiovanni</u>, 852 F.3d 1298, 1305 (11th Cir. 2017) ("The nature and physical

injuries sustained by a Plaintiff"). More to the point, is the Court's rationale at

1121:

> The officers knew that for no apparent reason,
> Hinson had just stabbed the victim in the throat,
> they had no way to be sure he was not still armed
> at the time... and it seemed like he may have been
> trying to get his hands on a weapon while Bias was
> trying to cuff him.

Finally, unlike this case, <u>Hinson</u> was decided on a summary judgment.

The Court then cites to dicta from the unpublished case of <u>Scott v. Battle</u>,

688 Fed. Appx. 674, 677 (11th Cir. 2017):

> Regardless, Eleventh Circuit decisions
> demonstrate that the point at which a suspect is
> handcuffed and poses no risk of danger to the
> officer is of the pivotal point for excessive force
> claims.

34

<u>Scott</u> was a case where the Plaintiff was injured after being handcuffed. <u>Scott</u>, however, did not involve a Plaintiff who had not been handcuffed.

Many cases arise involving excessive force prior to handcuffing, <u>see</u> <u>e.g.</u> <u>Fils v. City of Aventura</u>, 647 F.3d 1272 (11th Cir. 2011) or even when there is to be no suspect. <u>e.g.</u> <u>Mercado v. City of Orlando</u>, 407 F.3d 1152 (11th Cir. 2005). Suffice it to say <u>Lee v. Ferraro</u>, 284 F.3d 1188 (11th Cir. 2002) is a case where excessive force was used prior to any handcuffing as is <u>Sheth v. Webster</u>, 145 F.3d 1231 (11th Cir. 1998). Indeed in <u>Ingram v. Kubik</u>, <u>supra</u> the Court only recently explained:

> And we have explained that "the same rationale applies to the use of gratuitous force when the excessive force is applied prior to the handcuffing but in the course of the investigation." <u>See</u> <u>Stephens v. DeGiovanni</u>, 852 F.3d 1298, 1328 & n.33 (11th Cir. 2017); <u>see</u> <u>also</u> <u>Patel</u>, 959 F.3d at 1340 (citing <u>DeGiovanni</u>, 852 F.3d at 1328 n.33) (rejecting the "argu[ment] that our precedent prohibiting the use of gratuitous and excessive force against non-resisting suspects applies only when the suspect is handcuffed"). Based on precedents that preceded Kublik's conduct, we have explained that "our case law is clear that serious and substantial injuries caused during a suspect's arrest when a suspect is neither resisting an officer's commands nor posing a risk of flight may substantiate an excessive force claim." <u>Sebastian</u>, 918 F.3d at 1310-11 (examining case law from 1997 to 2017); <u>see</u> <u>also</u> <u>Patel</u>, 959 F.3d at 1343 ("[O]ur cases establishing this principle date to at least 2000.").

The Court cites to the unpublished case of Hall v. McGee, 762 Fed. Appx. 837 (11th Cir. 2019), a case in which excessive force was used in 2013, that is before Saunders v. Duke, 766 F.3d 1262 (11th Cir. 2014) and Stephens v. DeGiovanni, 852 F.3d 1798 (11th Cir. 2017) were decided. In Hall, a reasonable officer "could believe that other items, like weapons or drugs were also being passed back and forth. There was a threat to the officers safety. Moreover, a reasonable officer "could perceive Defendants attempt[ing] to flee or to retrieve a weapon." Id. at 842. These are not the facts of this case.

The Court cites to Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000). As pointed out above at page 25. Nolin cannot be squared with Saunders or Stephens, but cf. Sebastian v. Ortiz, 918 F.3d 1301 (11th Cir. 2018).

And the Court cites to Post v. City of Fort Lauderdale, 7 F.3d 1552 (11th Cir. 1993) modified 14 F.3d 583 (11th Cir. 1994).

What is missing from the Court's alternative analyses is a weighing of the Graham factors.

This Court did such a weighing in Sebastian supra and held that the officers had no qualified immunity. As the Court noted in Sebastian, "the nature and extent of physical injuries sustained by the Plaintiff are key factors in determining whether the use of force was reasonable and here Sebastian has alleged serious, permanent injuries." 918 F.3d at 1309.

> Defendant grabbed him and after threw him to the
> ground, thoroughly breaking his collar bone
> causing other minor injuries.

(R-1-1 paragraph 8) "Plaintiff's injuries required two surgeries to repair his

shoulder." Id. at paragraph 9.

In Sebastian, this Court noted that speeding was "a minor, nominal offense."

One is reminded of the Supreme Court's admonition in Stanley v. Illinois,

405 U.S. 645, 656 (1972).

> The establishment of prompt efficacious
> procedures to achieve state ends is a proper state
> interest worthy cognizance in constitutional
> adjudication. But the Constitution recognizes
> higher values than speed and efficiency. Indeed,
> one might fairly say of the Bill of Rights in
> general, and the Due Process Clause in particular,
> that they were designated to protect the fragile
> values of a vulnerable citizenry from the
> overbearing concern for efficiency and efficacy
> that may characterize praiseworthy government
> officials no less, and perhaps more, than mediocre
> ones.

The final Graham factor is "whether [Plaintiff] is actively resisting arrest or

attempting to evade arrest by flight. In Graham, supra at 396. There can be no

argument that Plaintiff was trying to "evade arrest by flight."

Nor was Plaintiff actively resisting.

37

In <u>Brand v. Casal</u>, 2015 WL 9304036 (N.D. Ga. 2015) aff'd in pertinent

part 877 F.3d 1253 (11th Cir. 2017) [9] the District Court explained, slip at 16-17:

> Construing the evidence in Plaintiffs' favor,
> Pardinas's use of force in tasing Mrs. Brand was
> obviously excessive under the <u>Graham</u> factors.
> First although Mrs. Brand was eventually arrested
> by Deputy Casal (and subsequently acquitted) for
> obstruction and cruelty to children in the third
> degree (for performing an act of alleged violence
> in front of a minor during the arrest), she was not
> the subject of the arrest warrant on the night of the
> incident. Under Plaintiffs' version, the only alleged
> violence was committed by Deputies Casal and
> Pardinas. And Mrs. Brand alleged obstruction of
> the arrest of her son and Deputy Casal's entry into
> her home "without force does not connote a level
> of dangerousness that would justify a greater use
> of force." <u>See</u> <u>Fils</u>, 647 F.3d at 1288 (discussing
> crimes of disorderly conduct and resisting arrest).

Although Plaintiff's facts are a little bit different in the initial case, the same

analysis applies herein. [10] <u>See</u> <u>also</u> <u>Fuller v. MARTA</u>, 2018 WL 8867801 (N.D.

Ga. 2018) slip at 5.

In <u>Mercado v. City of Orlando</u>, [11] 407 F.3d 1152 (11th Cir. 2005) Plaintiff

had a knife and was threatening to commit suicide.

---

[9] The opinion was thereafter vacated by reason of settlement.

[10] Indeed, Mrs. Brand was very much more belligerent than Mr. Johnson. <u>See</u> the
District Court opinion slip at 4-5. This Court noted at 1264 "Mrs. Brand was
neither actively resisting arrest nor attempting to escape when Deputy Paradinas
tased her" citing <u>Graham</u>, 440 U.S. at 396.

[11] <u>Mercado</u> cited to <u>Deole v. Rutherford</u>, 272 F.3d 1272, 1284-1285 (9th Cir. 2001)
and described <u>Deorle</u> as "statutory cooperative." This is what the 9th Circuit wrote,

> The officers identified themselves and ordered
> Mercado to drop his knife at least two times (once
> in English and once in Spanish), but he refused
> without making any threatening moves toward the
> officers. At no time did the officers warn Mercado
> that force would be used if he did not drop his
> weapon.

Id. at 1154. 15 to 30 seconds later he was shot with a Sage Launcher. This Court

concluded that the fact that Mr. Mercado did not drop his knife "was not actively

resisting." Compare Fernandez v. City of Cooper City, 207 F. Supp 2d 1371, 1377

(S.D. Fla. 2002) (Plaintiff "began to physically resist). Mercado certainly

distinguishes failure to obey instructions from the situation in Fernandez, 407 F.3d

at 1157. Plaintiff never made a threatening move.

Recently in Ingram v. Kubick, 30 F.4th 1241, 1252 (11th Cir. 2022) this

Court cited to Mercado:

> Because [Ingram] was not committing a crime,
> resisting arrest, or posing an immediate threat to
> the officers at the time he was (body slammed)
> Kubick used excessive force when apprehending
> [Ingram] Mercado, 407 F.3d at 1157-58. So,
> Ingram has satisfied his burden to show that "the
> officers violated a constitutional right.

---

he "continued to hold the crossbow in his right hand. In his left hand he was
carrying a can of lighter fluid. [He] advanced toward Rutherford and then said
something to the effect of "I'm going to knife your ass' motherfucker" 272 F.3d at
1287 (dissent). The majority had noted that Plaintiff "was walking in Rutherford's
direction with a can or bottle in his hand" 272 F.3d at 1282.

In <u>Stryker v. City of Homewood</u>, 976 F.3d 769 (11ᵗʰ Cir. 2020) this Court

noted:

> The first <u>Graham</u> factor involves assessing the
> severity of the crime at issue. <u>Graham</u>, 490 U.S. at
> 396, 109 S. Ct. 1865. This factor favors <u>Stryker</u>.
> As the district court recognized, and as Stryker
> himself concedes on appeal, "[p]robable cause for
> Mr. Stryker's arrest was conclusively established
> based on the state court conviction." Nevertheless,
> the underlying crime- a misdemeanor municipal
> ordinance violation for failing to comply- cannot
> fairly ne described as "severe." We have
> previously described similar charges, for instance
> obstruction and disorderly conduct charges
> stemming from a failure to comply with a law
> enforcement officer's order, as "of minor severity"
> for the purpose of the <u>Graham</u> analysis. <u>Vinyard v.
> Wilson</u>, 311 F.3d 1340, 1347 (11ᵗʰ Cir. 2002); <u>see
> also</u> <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1288
> (11ᵗʰ Cir. 2011) ("[d]isorderly conduct is not a
> serious offense" and "resisting arrest without force
> does not connote a level of dangerousness that
> would justify a greater use of force"); <u>Reese v.
> Herbert</u>, 527 F.3d 1253, 1274 (11ᵗʰ Cir. 2008)
> ("The crime of misdemeanor obstruction is a crime
> of 'minor severity' for which less force is
> generally appropriate.").
> The district court reached the opposite conclusion
> and said that "Mr. Stryker's refusal to comply with
> Officer Davis's orders is sufficiently severe under
> the circumstances to justify the use of force against
> him." This conclusion conflicts with our
> precedent: "non-violent suspects, accused of minor
> crimes, who have not resisted arrest... are victims
> of constitutional abuse when police used extreme
> violence to subdue them." <u>Fils</u>, 647 F.3d at 1289.
> Under Stryker's version of the facts, he was not
> resisting or fleeing when he was shot in the back

with the taser. Although no party disputes that
Officer Davis had probable cause to arrest him for
his previous noncompliance, the crime at issue was
not severe.

The second and third <u>Graham</u> factors- which ask
whether the suspect poses a threat to officers or is
attempting to evade arrest- also favor Stryker.
<u>Graham</u>, 490 U.S. at 396, 109 S. Ct. 1865. Under
Stryker's version of the facts, he was returning to
his truck with his back to Officer Davis when
Davis shot him in the back with the taser. He
denies ever attempting to elbow the officer and
testified that it would have been "impossible" for
the officer to have thought he was trying to hit
him. Similarly, under his version of events he
could not have been attempting to resist or evade
arrest because, until he was tased, he had no
indication that Officer Davis intended to arrest
him.

If more force is appropriate for a serious offense
and less force is appropriate for a less serious one
than minimal force is appropriate here.

In <u>Johnson v. City of Miami Beach</u>, 18 F.4th 1267 (11th Cir. 2021):

When the officers walked Johnson to the transport
vehicle and told him to have a seat, Johnson did
not immediately comply….

<u>Id</u>. at 1270. He later sat down:

During the <u>seven minutes</u> their Defendant Aguila
was present at the scene of the arrest, Johnson
repeatedly asked the officers why he was being
arrested, insisting he had done nothing wrong, and
had accused them of setting him up. While
Johnson was talkative, he was not physically
aggressive. <u>He did not immediately follow the
order to sit down in the police vehicle</u>, but after 20
or so seconds, he sat down in the vehicle… [he
still] did not want to get out of the police car

41

Id. Sebastian, supra at 1309. Driving under the influence is a misdemeanor according to O.C.G.A. § 40-6-91. Therefore less force was appropriate here.

The second factor is "whether the suspect poses an immediate threat to the safety of the officers or others." There "is absolutely no evidence indicating that [Plaintiff] posed any threat to the officers or anyone else." Ferraro, supra at 1198. The Court agrees "while it is true that Johnson was not threatening Rolfe" (R1-20-13). But according to the Court, it took "approximately ten minutes attempting to conduct a DUI investigation," so apparently the second factor doesn't apply at all.

But as the Court noted in Deorle v. Rutherford, 272 F.3d 1272, 1281 (9th Cir. 2001):

> A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury. There must be other significant circumstances that warrant the use of such a degree of force at the time it is used.

This is how the Court ends up summarizing the Graham factor, R1-20-16-17.

> In this case, Rolfe does not dispute that the crime for which Johnson was arrested (driving while under the influence) is a misdemeanor. Although Rolfe does not claim that Johnson was a threat to him, he points out that Johnson had been drinking and speeding on a wet roadway; he had resisted arrest while standing on the side of a busy interstate highway; and Rolfe had exhausted verbal efforts to get Johnson to cooperate. Rolfe argues

42

that his only remaining option to reduce the risk of
winding up in the lanes of traffic was to take
Johnson to the ground.

It is not clear why "driving and speeding on a wet roadway" changes the

calculus on the first <u>Graham</u> factor. Nor is it clear that Plaintiff had <u>actively</u>

resisted arrest under <u>Mercado</u>, <u>Fils</u>, and <u>Brand</u> or that standing on the side of a road

changes the calculus on the second and third factors. When the Court notes that

"Rolfe had exhausted verbal efforts to get Johnson to cooperate," the Court had

noted that this entire incident took "approximately ten minutes," R1-2—13-14 to

subdue Plaintiff.[12]

## E. THE CITY HAS MONELL LIABILITY

It is not clear to Plaintiff whether the Court below found that Plaintiff had

not been the victim of excessive force or whether the officer had qualified

immunity for using excessive force, <u>see</u> R1-20-18-21, or simply found that no

excessive force had been used, <u>id</u>. R1-20-21.

To be clear, if the Court found no excessive force had been used (as set out

at R1-20-21) and this Court agrees, then of course the City cannot be held liable.

<u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986). However, if the holding was

simply that the official had qualified immunity, then Plaintiff believes the city can

---

[12] R1-20-5, "Rolfe spent the next approximately ten minutes attempting to conduct
a DUI investigation of Johnson. Johnson was not belligerent or violent, but he was
not fully cooperative.

43

still be liable. Compare Martin v. City of Elwood, 997 F.2d 774, 783 (10th Cir. 1993) with Favors v. City of Atlanta, 849 Fed Appx 813 (11th Cir. 2022).

### F. DEFENDANT WAS NOT ENTITLED TO OFFICIAL IMMUNITY AS A MATTER OF LAW

Plaintiff also sued Defendant Rolfe for three causes of action under state law:

1) Violating Art. Sec 1. Para. XIII;

2) Violating Art. 1 Sec. 1 Para. XVII;

3) Battery.

The Court grouped the three claims together (R1-20-20) and held that the officers had official immunity. The Court stated:

> In other words, Johnson must show that Rolfe acted with the deliberate intent to specifically hurt Johnson's shoulder. Yet, the video recordings are devoid of such evidence.

(emphasis added). As argued above, the video recordings could not be considered but they do not tell the story the Court recites. More to the point, there is no requirement that Plaintiff shows that Defendant meant to injure his shoulder. That is a requirement invented by the Court. See Tittle v. Corso, 256 Ga. App 859, 862 (2002) (Actual malice constitute 'a deliberate violation to commit a wrongful or alleged act). Quinette v. Reed, 805 Fed Appx 696 (11th Cir. 2020).

44

As the Court noted in <u>Griswold v. Collins</u>, 318 Ga. App. 536, 558-559

(2012):

> Official immunity. Collins asserts that she is
> entitled to immunity from Griswold's suit under
> the doctrine of official immunity, which "protects
> individual public agents from personal liability for
> discretionary actions taken within the scope of
> their official authority, and done without
> wilfulness, malice, or corruption." (Citation and
> punctuation omitted.) <u>McDowell v. Smith</u>, 285 Ga.
> 592, 593, 678 S.E.2d 922 (2009); <u>see</u> <u>Ga. Const. of
> 1983</u>, Art. I, Sec. II, Par. IX (d).
> We agree with Collins that her acts toward B.G.
> were discretionary, not ministerial. As a teacher,
> Collins was required to exert discipline, control
> and supervision over the students in her classroom,
> acts that this Court has held constitute
> discretionary acts involving the exercise of
> personal deliberation and judgment. <u>See</u> <u>Gamble v.
> Ware County Bd. of Ed.</u>, 253 Ga.App. 819,
> 824(2)(b), 561 S.E.2d 837 (2002). We are not
> persuaded by Griswold's argument that, under our
> Supreme Court's decision in <u>McDowell v. Smith</u>,
> 285 Ga. 592, 678 S.E.2d 922 (2009), Collins's acts
> were ministerial because she failed to follow a
> "simple, absolute, and definite" school policy
> against touching students to "invoke punishment."
> The defendant in <u>McDowell</u>, a school receptionist,
> "was merely required to execute specific duties as
> dictated by the school checkout policies," <u>id</u>. at
> 593, 678 S.E.2d 922, not to supervise students in a
> classroom. "Supervision of students is considered
> discretionary even where specific school policies
> designed to help control and monitor students have
> been violated." (Citations omitted.) <u>Chamlee v.
> Henry County Bd. of Ed.</u>, 239 Ga.App. 183,
> 184(1), 521 S.E.2d 78 (1999).

45

Nevertheless, Collins is not entitled to official immunity as a matter of law because questions of fact exist regarding whether her actions against B.G. were done with wilfulness or actual malice. We recognize that actual malice requires a showing that the actor had a deliberate intention to do wrong, Adams v. Hazelwood, 271 Ga. 414(2), 520 S.E.2d 896 (1999), and that "[w]ilful conduct is based on an actual intention to do harm or inflict injury." (Citations omitted.) Chrysler Corp. v. Batten, 264 Ga. 723, 726(3), 450 S.E.2d 208 (1994). But at this stage we must take B.G.'s depiction of the events as true, and she testified that Collins choked her on two different occasions (once for a period of two to three minutes) and hit her bare leg with two rulers on a third occasion. In the process, B.G. testified, Collins made it difficult for her to breathe, broke her necklace, and left noticeable marks on her leg and neck.

If the jury found B.G.'s testimony persuasive, it would be authorized to find that Collins's conduct exceeded the permissive " reasonable physical force" a teacher can use "to keep good order in the classroom," as seen in Daniels v. Gordon, 232 Ga.App. 811, 813(1), 503 S.E.2d 72 (1998) (citations and punctuation omitted) (involving uncontroverted testimony of teacher that she merely grasped middle school student's face to get his attention and stop his misbehavior). A jury reasonably could view the behavior described by B.G. as egregious, unprovoked physical attacks by an adult on a young child. While a jury would not be compelled to accept B.G.'s version of the events or to find that the nature of those actions reflected actual malice or willfulness on Collins's part, given the girl's depiction of Collins's behavior, a jury could find that she deliberately intended to do wrong or to injure the girl.

46

In <u>Tuggle v. Rose</u>, 333 Ga. App. 431 (2013) the Court distinguished

<u>Griswold</u>:

> In other words, we found that the very nature of
> the acts as described by the plaintiff—the
> unprovoked choking and striking with rulers of a
> second-grader, sufficient to leave visible injuries—
> was circumstantial evidence of the teacher's intent
> to deliberately hurt the student. We do not find that
> the nature of the acts described by P.R. is
> circumstantial evidence of Tuggle's malice or
> intent to deliberately hurt him.

Viewed properly the videotape shows a deliberate intent to injure or do wrong.

<u>Porter v. Massarelli</u>, 303 Ga. App. 91 (2010).

In <u>Quinette v. Reed</u>, 805 Fed Appx 696 (11th Cir. 2020) this Court affirmed

the denial of official immunity. Plaintiff was an inmate and was trying to get the

officer's attention so he could make a phone call.

> Quinette "remained respectful and polite, never
> banging loudly on the cell door or window, never
> yelling, and never causing any sort of disturbance."
> Instead of helping Quinette, Reed shut the door on
> him. Quinette placed his hand on the window of
> the cell door as it closed. He exerted no "force or
> pressure" on the window and did not prevent the
> door from closing. At that point, Quinette was "not
> resisting any officer," "not presenting a threat of
> any kind," and "not causing a disturbance." After
> the cell door made contact with the doorframe,
> Reed reopened it and stepped into the cell. Then,
> without warning, Reed shoved Quinette with two
> hands. The shove threw Quinette backwards,
> where he fell hard onto the cell floor. He howled

> and curled up in pain. His hip was broken in the fall.
>
> Reed walked away as Quinette lay motionless on the cell floor. A minute later, he returned, attempting to drag Quinette to his feet. Quinette again howled in  pain, unable to stand. Reed berated Quinette, leaning over him and yelling, "[y]ou tried to rush me!"

Id. at 699. The Court noted that the Defendant enjoyed no official immunity.

> Here, under the facts alleged, there is no question that Reed intended to cause harm to Quinette. Reed intentionally reopened the closed cell door, stepped forward, and applied force without any apparent reason on a non-resistant detainee. Such a use of force—without any conceivable justification—manifests "a deliberate intention to do wrong" and defeats Reed's official immunity. Id.
>
> Although one would not expect Reed's shove to lead to the serious harm that Quinette ultimately suffered, the unexpected extent of Quinette's injury does not neutralize, let alone immunize, Reed's initial misconduct. Put differently, the harm intended by Reed was the unjustified shove itself; that Quinette unexpectedly broke his hip further along the causal chain is irrelevant to our official immunity analysis. Consistent with this conclusion, the longstanding rule in Georgia is that "a tortfeasor takes a plaintiff in whatever condition he finds him." AT Sys. Se., Inc. v. Carnes, 613 S.E.2d 150, 153 (Ga. 2005) (quoting Coleman v. Atlanta Obstetrics & Gynecology Group, 390 S.E.2d 856 (Ga. 1990)). And, more particularly, a wrongdoer "must bear the risk that his liability will be increased" depending on the actual physical condition of his victim. Id.
>
> Under Georgia law, a "factfinder may infer from evidence that a defendant acted with actual

malice." <u>Lagroon v. Lawson</u>, 759 S.E.2d 878, 883
(Ga. Ct. App. 2014). Given the facts alleged in this
complaint, a jury could properly conclude that
Reed acted with "actual malice." We therefore
affirm the denial of official immunity.

In the instant case the facts allege an intentional use of force that was

excessive. Even the videotape which Plaintiff contends was wrongfully relied upon

shows Plaintiff being slammed to the ground, although at no time was Plaintiff

physically resisting.

The Court denied official immunity.

The District Court erred in ruling as a matter of law that Defendant was

entitled to official immunity.

## VII. CONCLUSION

The Court was without authority to view the videotape on a 12(c) motion

because it was not a 'written instrument,' was not central to Plaintiff's claims and

not referred to in the complaint.

The Court erred in holding that suffering a shoulder injury which required

two surgeries de minimis.

The Court erred in holding Defendant had not violated Plaintiff's clearly

established right to be free of excessive force in light of his significant injury and

the fact that all of the <u>Graham</u> factors weighed in Plaintiff's favor.

49

The Court erred in holding that no <u>Monell</u> claim had been stated against the City.

The erred in finding as a matter of law that Defendant Role had official immunity under state law.

This Court should reverse the District Court and remand for further proceedings.

Respectfully submitted,

Goldberg & Cuvillier, P.C.
3469 Lawrenceville Hwy., Ste. 102
Tucker, GA 30084
(770) 670-7343
(770) 670-7344
attorneygoldberg@hotmail.com

Ralph Goldberg
Georgia Bar No. 299475
Attorney for Appellant

50

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

I hereby certify that this brief complies with the type-volume limitation set

forth in the F.R.A.P. 32(a)(7)(B). According to the word count of commercial

software, this brief contains 12,545 words, excluding parts of the brief exempted

by Fed. R. App. P. 32(a)(7)(B)(iii).

Goldberg & Cuvillier, P.C.
3469 Lawrenceville Hwy., Ste. 102
Tucker, GA 30084
(770) 670-7343
(770) 670-7344
attorneygoldberg@hotmail.com

Ralph Goldberg
Georgia Bar No. 299475
Attorney for Appellant

## CERTIFICATE OF SERVICE

This will certify that I have on this _____ day of May, 2022, served the

foregoing Notice of Appeal upon all parties/counsel of record electronically or by

placing same in the United States Mail, postage prepaid, addressed as follows:

Thomas H. Mitchell
1809 Buford Highway
Buford, GA 30518

Goldberg & Cuvillier, P.C.
3469 Lawrenceville Hwy., Ste. 102
Tucker, GA 30084
(770) 670-7343
(770) 670-7344
attorneygoldberg@hotmail.com

Ralph Goldberg
Georgia Bar No. 299475
Attorney for Appellant